IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

LIZZIE HOWARD,

    Plaintiff,

v.                                    No. 06-2352 B

NATIONWIDE PROPERTY AND CASUALTY
COMPANY,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

INTRODUCTION AND PROCEDURAL BACKGROUND

This lawsuit was originally brought by the Plaintiff, Lizzie Howard, against the Defendant, Nationwide Property and Casualty Co. ("Nationwide"), in the Shelby County Circuit Court in Memphis, Tennessee on May 2, 2006 for proceeds allegedly due under an insurance contract written by the Defendant and insuring Howard's residence and contents, which were destroyed by fire on or about August 5, 2005. The matter was removed to this Court on June 13, 2006 based upon 28 U.S.C. § 1332.[1] Before the Court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The dispositive motion was filed on May 10, 2007. When the Plaintiff, who is represented by counsel, failed to respond thereto within the prescribed time period, the Court entered an order directing her to show cause why this action should not be dismissed for failure to prosecute. The Plaintiff filed a response to the show cause order along with

---

[1] The statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States . . ." 28 U.S.C. § 1332(a)(1).

a response to the dispositive motion. In neither filing did Howard request an extension of the time to respond to the motion for summary judgment or offer any basis for a finding by the Court of excusable neglect in failing to timely file a response. Therefore, in an order entered July 13, 2007, the Court granted the motion of the Defendant to strike from the record Howard's response to the motion for summary judgment.

## STANDARD OF REVIEW

Rule 56, which states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on her pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The "judge may not make credibility determinations or weigh the

evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

It has been recognized that

> [t]he mere fact that [a] plaintiff has failed to respond to [a] defendant's motion . . . does not mean that summary judgment should be granted automatically.  Rather, summary judgment may be granted as long as [the plaintiff] has received notice that failure to file an opposition may result in dismissal of [her] case and the Court is satisfied that the undisputed facts show that the moving party is entitled to a judgment as a matter of law

Gustin v. Potter, 474 F. Supp. 2d 460, 463 (W.D.N.Y. 2007) (internal citations and quotation marks omitted).  Based on the Plaintiff's failure to timely respond, which this Court found in its order of July 13, 2007 not to constitute excusable neglect, the following facts as set forth by the Defendant are undisputed.  On or about April 15, 2005, the Plaintiff entered into a contract for insurance with Nationwide for property located at 1336 Kney Street in Memphis, Tennessee. (Compl. at ¶ 4)  On or about August 5, 2005, a fire damaged the property covered by the insurance contract. (Compl. at ¶ 6)  Howard made a claim under the insurance policy for the fire loss, for which the Defendant declined coverage. (Compl. at ¶ 17)  The stated reasons for the denial were that the fire was "caused by or at the direction of the named insured" and "fraud and false swearing in a submission of a claim for coverage . . . and in the application for insurance." (Compl. at ¶ 17)

The supplemental application completed by the Plaintiff on April 19, 2005 requested information concerning whether she or a member of her household had been convicted of a felony in the past ten years. (Def., Nationwide Prop. & Cas. Ins. Co.'s Mot for Summ J., Ex. 2 (Supp. App. for Ins.))  On the application, signed by the Plaintiff, Howard answered "no" to a question asking whether she or a member of her household had been convicted of a felony in the past ten years. (Def., Nationwide Prop. & Cas. Ins. Co.'s Mot for Summ J., Ex. 2 (Supp. App. for Ins.))  Howard

also indicated on the application bearing her signature that the insured residence was owner occupied. (Def., Nationwide Prop. & Cas. Ins. Co.'s Mot for Summ J., Ex. 2 (Supp. App. for Ins.))

Plaintiff's son, Alex Howard, lived at the residence but had been convicted of forgery in 1999 and spent two years in prison. (Def., Nationwide Prop. & Cas. Ins. Co.'s Mot for Summ J., Ex. 4 (Crim. Rec. of Alex Howard)) Nationwide contends, citing to her sworn statement, that the Plaintiff had not lived at the residence since 1999, when she moved into Linden Camilla Tower, a retirement facility. (Def., Nationwide Prop. & Cas. Ins. Co.'s Mot for Summ J., Ex. 3 (Sworn Stmt. of Lizzie Mae Howard) at 39, 99) The Defendant insists that the false statements contained in the application regarding the Plaintiff's son's criminal history and her residence materially increased its risk of loss and deprived it of the right to further inspect her insurability.

## ANALYSIS OF THE PARTIES' CLAIMS

The substantive law of Tennessee applicable to insurance contracts governs this case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) (in case based on diversity jurisdiction, the Court is to apply the substantive law of the state in which it sits). Tennessee Code Annotated § 56-7-103 provides in relevant part that

> [n]o written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

"[I]n order to avoid coverage under the statute, an insurer must prove two things. First, [it] must prove that the answers to the questions on the application were false. Then [it] must demonstrate that the misrepresentation was material, which requires proving *either* that the false answers were given with intent to deceive the insurer *or* that the false answers increased the risk of loss." Howell

4

v. Colonial Penn Ins. Co., 842 F.2d 821, 822 (6th Cir. 1987) (emphasis in original); see also Womack v. Blue Cross & Blue Shield of Tenn., 593 S.W.2d 294, 295 (Tenn. 1980).  "If a misrepresentation is found to increase the risk of loss, the policy is voidable under the statute even if the misrepresentation was innocently made." Howell, 842 F.2d at 822-23.  "The issues of whether a misrepresentation exists and whether false answers were given with 'intent to deceive,' are questions of fact to be determined by the factfinder.  Tennessee courts have consistently held that the determination of these factual questions should be made by a jury and not by a court on a summary judgment motion, unless reasonable minds could reach only one conclusion.  Once it is determined that a misrepresentation exists, it is a question of law, not fact, for the court as to whether the misrepresentation increased the risk of loss." Id. at 823 (internal citations omitted).  "By signing an insurance application and attesting to its truthfulness, an insured is generally bound to everything the application contains." Metro. Prop. & Cas. Ins. Co. v. Bell, No. 04-5965, 2005 WL 1993446, at *3 (6th Cir. Aug. 17, 2005) (citing Beasley v. Metro. Life Ins. Co., 190 Tenn. 227, 229 S.W.2d 146, 147 (Tenn. 1950)).

  In her sworn statement, Howard stated that she received the property at 1336 Kney Drive as well as the adjoining parcel at 1338 Kney from her mother in 1990.  She had also purchased the lot at 1332 Kney in 1989.  After she moved into the Linden Camilla Tower on January 12, 1999, the house at 1336 Kney was rented out to various persons.  In approximately 2002, Plaintiff leased the residence to her sister, Linda Williams.  Howard was on a fixed income and could not make the mortgage payments on the property without the rental proceeds.  When Williams failed to pay the rent, Howard's son, Alex, who at that time lived in Louisiana with his wife and children, made the mortgage payments so that the Plaintiff would not lose the house.

5

The following year, Howard's grandson moved into the residence. He paid a portion of the mortgage payment, with Alex supplying the remainder. Alex and his family moved to Memphis in December 2004 and settled into the house at 1336 Kney, after the grandson relocated to an apartment. There was never a rental agreement between Alex Howard and his mother. The family originally planned at that time that Alex would move into the house "where [his family and his mother] would be there as a family and they could take care of [the Plaintiff]." Certain items belonging to Lizzie Howard were in the home when Alex moved in, including winter clothing and garden tools stored in the attic, appliances to be used by Alex and his family and a sewing machine used for storage in the bathroom.

In January 2005, the Plaintiff allowed her apartment at Linden Camilla Tower "go on hold" for a month while she stayed at 1336 Kney to "see how it worked" living with her son's family. Her possessions remained at the apartment. She soon realized, however, that life in a two-bedroom house with three young children was too much for her. Howard stayed for a weekend and "came back home" to her apartment. She tried it for another week and "came back home" again. The Plaintiff recalled that, after attempting to live with her son's family over a period of some three weeks, it drove her "crazy." The longest she stayed at the 1336 Kney house at one time was five days. Occasionally she stayed at the house to babysit her grandchildren while their parents went out.

After returning to her apartment, Howard applied for participation in a city-run program that rebuilt homes for senior citizens. Under the program, Plaintiff wanted to tear down the two-bedroom house at 1336 Kney and build a three-bedroom structure on the property. Afterward, she hoped that her son could obtain a loan to build a house on the adjoining lot so they could all live near each other. At the time of the fire in August 2005, the application documents had been signed

6

and the process was at the committee approval stage.

Lizzie Howard averred in her statement that a non-assumable loan in her name encumbering 1336 Kney precluded her son from assuming the loan and that he was unable, due to credit difficulties, from obtaining a loan in his name by which to purchase the home. Therefore, she "in word, mouth, gave [the house] to them when they sent that [money after her sister moved out of the home in 2003]. I told them they could have it, you know, because I'm sick of it and I done held on to it all this time; but I didn't write it out, no contract, because I couldn't write it out, because I had the loan with Ameriquest, and it was a no [sic] assumable loan." When asked whether at that point she "basically considered it to be [her son's]," she replied in the affirmative. She further stated that "I had gave this [the house] to them in words and deed, mouth, but I couldn't give it to them in paper" because of the Ameriquest loan provisions.

The application for insurance, a copy of which has been provided to the Court in connection with the instant motion and bearing an effective date of April 15, 2005, reflects that the policy was taken out in the name of Lizzie Howard and that the home had six occupants, one of which was the owner. The application was signed by Lizzie Howard and dated April 19, 2005. In a supplemental application document signed by the Plaintiff on the same date, she placed her initials on the form indicating, among other things, that (1) neither she nor any member of her household had been convicted of a felony in the past ten years and (2) the insured residence was owner occupied. At the time the policy was applied for and issued, Alex Howard resided at 1336 Kney and was making the mortgage payments, while his mother lived at the Linden Camilla Tower. Howard's daughter-in-law, Iffie Renee Howard, also related in her sworn statement that it was her understanding that the house belonged to her and Alex. She further recalled that Lizzie Howard gave them a quitclaim

7

deed for the property but that it was never recorded.

With respect to her son's criminal record, according to documents provided by the Defendant, Alex Howard was indicted in October and November 1998 for felony criminal attempt, theft of property and forgery. The following colloquy occurred relevant to the issue in Lizzie Howard's statement:

> Q:  Does you son have any criminal record?
>
> A:  Yes, but is that -- yes.
>
> Q:  And what criminal record does your son have?
>
> A:  That's [sic] got to do with the situation?
>
> Q:  Yes, ma'am.
>
> A:  Yes. He served his time.
>
> Q:  What criminal record?
>
> A:  I really can't see -- he -- ten years ago or twelve years ago -- I can't even remember now. Him and his wife be together six years. So it had to be ten years ago. He was working at -- I think he was a security -- he was a sheriff deputy out there at the Penal Farm I think, and he and somebody else did some checks.
>
> Q:  So there had forgery charges?
>
> A:  Uh-huh (affirmative), and he did two years at the Penal Farm.
>
> Q:  Was he on probation?
>
> A:  They took him back where he was working. Oh, no, he been finished with that. That's been ten years ago. He paid his -- he served two years, and then he been finished with that.
>
> Q:  Was he on probation for a period of time after he served the time?
>
> A:  Yes, he was on probation for a period of time.

Q:    How long was he on probation?

A:    I done forgot. He used to go to the meetings and go to all kind of stuff over there when the probation office was on Madison and Cleveland, because I used to go over there with him; and he had to go through all kind of classes and stuff, but he finished that situation.

Q:    And do you remember how long ago it was that he finished the probation?

A:    Oh, they had him going look like every -- you know, a period of time, every six weeks or every -- he spent his -- finished that before he left there.

Q:    When was that?

A:    They been gone five years.

Q:    Okay. So somewhere around five years ago you think he finished the probation?

A:    Yes, uh-huh (affirmative).

Based on the statements of the Plaintiff herself and those of her daughter-in-law, the Court concludes that reasonable minds could reach only one conclusion; that is, that Lizzie Howard made misrepresentations concerning whether she lived in the house and whether a member of the household had a criminal conviction within the last ten years. See Howell, 842 F.2d at 823, supra. The Court must next determine whether, as a matter of law, the misrepresentations were made with intent to deceive or increased the risk of loss. See id., supra. In support of its argument that the latter is true, the Defendant offered the affidavit of Delma P. Locke, Jr., Property Product Manager for the South Central States for Nationwide. Therein, Locke asserted that the insurer sought information involving felony convictions and owner occupancy in order to make an honest appraisal of the Plaintiff's insurability and that her failure to disclose truthful information materially increased the risk of loss to Nationwide. Locke further posited that, under the insurer's underwriting

9

guidelines, an affirmative answer to the query as to the existence of a felony conviction or a negative response to whether the residence to be insured is owner occupied results in ineligibility for coverage, and that if they had known of the misrepresentations, the policy would not been issued.

Tennessee courts have held that a "misrepresentation made in an application for insurance increases the risk of loss when it is of such importance that it naturally and reasonably influences the judgment of the insurer in making the contract." Vermont Mut. Ins. Co. v. Chiu, 21 S.W.3d 232, 235 (Tenn. Ct. App. 2000), app. denied (June 12, 2000) (citing Sine v. Tenn. Farmers Mut. Ins. Co., 861 S.W.2d 838, 839 (Tenn. Ct. App. 1993)) (internal quotation marks omitted); see also Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc., 303 F. Supp. 2d 897, 914 (W.D. Tenn. 2003). "It is not necessary to find that the policy would not have been issued if the truth had been disclosed. It is sufficient that the insurer was denied information which it sought in good faith and which was deemed necessary to an honest appraisal of insurability." Loyd v. Farmers Mut. Fire Ins. Co., 838 S.W.2d 542, 545 (Tenn. Ct. App. 1992). "It need not involve a hazard that actually produced the loss in question." Smith v. Tenn. Farmers Life Reassurance Co., 210 S.W.3d 584, 590 (Tenn. Ct. App. 2006), app. denied (Nov. 13, 2006). As the Plaintiff does not dispute the fact that Nationwide would not have issued the policy absent the misrepresentations, no material facts are in dispute.

## CONCLUSION

Based on the foregoing, the motion for summary judgment is GRANTED. See Stafford v. Allstate Ins. Co., No. 04-2811 MA, 2006 WL 335588 at *4 (W.D. Tenn. Feb. 13, 2006) (where plaintiffs failed to dispute affidavit of insurer that it would not have issued the policy if it had been aware of misrepresentations, there were no material facts in dispute and summary judgment was warranted); Tenn. Farmers Mut. Ins. Co. v. Westmoreland, No. E2000-02693-COA-R3-CV, 2001

WL 579047, at *2, 4-5 (Tenn. Ct. App. May 30, 2001), app. denied (Nov. 5, 2001) (insured's false response on insurance application concerning felony convictions increased insurer's risk of loss as evidenced by underwriter's uncontroverted affidavit; thus, summary judgment was appropriate). The Clerk of Court is hereby DIRECTED to enter judgment for the Defendant.

    IT IS SO ORDERED this 19th day of July, 2007.

                                s/ J. DANIEL BREEN
                                UNITED STATES DISTRICT JUDGE